ORIGINAL

Elm.sever.resp

LEONARDO M. RAPADAS
United States Attorney
RUSSELL C. STODDARD
First Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
MAR 16 2006
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CHRISTOPHER M. ESPINOSA,<br>and BRIAN WILLIAM ELM,<br><br>　　　　　Defendants. | CRIMINAL CASE NO. 05-00053<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT ELM'S MOTION FOR SEVERANCE** |

COMES NOW the United States, by and through its First Assistant United States Attorney, and in filing this response to Defendant Brian William Elm's Motion for Severance, states as follows:

### STATEMENT OF FACTS

The government expects the testimony at trial to be that in approximately July, 2004, co-conspirator Jonathan Canovas traveled from Las Vegas, Nevada to his parent's home in Guam. At the time, Canovas was selling methamphetamine hydrochloride (methamphetamine) to various individuals, including persons on Guam.

To deliver the drugs from Las Vegas to his contacts in Guam, Canovas would put the methamphetamine in greeting cards and then mail the cards to the purchasers.

While visiting his parents in Guam, Canovas attended a barbeque at the home of Erik Aponik. During the barbeque, Canovas was approached by one of the other guests at the barbeque, Brian Elm. Elm, apparently aware of Canovas' drug dealing activity, asked Canovas if he could begin providing methamphetamine to him. Canovas agreed.

Sometime after he returned to Las Vegas, Canovas began sending methamphetamine to Elm using the same methods as previously described. Canovas' partner in the enterprise and the person responsible for securing the methamphetamine, was Christopher Espinosa.

Once Elm received the methamphetamine, he would distribute the drugs to other individuals in Guam. Elm enlisted Erik Aponik to take the drug proceeds and deposit them into a bank account Canovas maintained at the Bank of Guam. Canovas would take the drug proceeds and share them with Christopher Espinosa, who, in turn, would use them to acquire more methamphetamine to send to Brian Elm.

This relationship continued for several months. Espinosa and Canovas would acquire methamphetamine, in ever increasing amounts, and mail the drugs to Elm. Elm would distribute the drugs and give the proceeds to Aponik. Aponik would deposit the funds into Canovas' bank account and Canovas and Espinosa would then use these funds to get more drugs. As the drug quantities increased, boxes containing the drugs and other items were substituted for the greeting cards.

In or about March, 2005, Brian Elm was arrested on unrelated federal firearms charges. Sensing his impending incarceration, Elm "introduced" Aponik to Canovas via cell phone to keep the drug and money laundering conspiracies from ending. Elm instructed Aponik as to the manner and means used by the conspirators to get the drugs from Las Vegas to Guam. Shortly thereafter, Aponik began receiving the mailed drugs from Canovas and Espinosa.

Sometime in April, 2005, Espinosa and Canovas had a falling out. Espinosa called Aponik and told him that, henceforth, Aponik would be dealing directly with Espinosa. When Aponik received the drugs from Espinosa he would distribute them and give the proceeds to
-2-

Espinosa using Western Union transfers and other methods to get the proceeds from Guam to Las Vegas. Such was the nature of the conspiracies when law enforcement intercepted one of the packages in June 2005 and arrested the participants.

## MEMORANDUM OF LAW

In order to obtain a severance from a joined defendant, the movant must demonstrate "clear," "manifest," or "undue" prejudice from a joint trial. United States v. McDonald, 576 F.2d 1350, 1355 (9th Cir.), cert. denied 439 U.S. 830 (1978). Elm has failed to meet this burden.

Generally, and especially in conspiracy cases, persons jointly indicted should be tried together. Zafiro v. United States, 506 U.S. 534 (1993). Judicial economy supports joint trials for promoting efficiency and serving "the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Richardson v. Marsh, 481 U.S. 200, 209 (1987). When properly joined under Fed. R. Crim. P. 8, defendants should be granted a severance only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about the guilt or innocence of the accused. Zafiro, 506 U.S. at 539.

There is no risk of prejudice of a specific trial right by joinder in this case. Furthermore, there is nothing about the facts that would prevent a jury from making a reliable judgment about either accused's guilt or innocence. The government has charged two conspiracies; drug distribution and money laundering. The defendants were both members of the same conspiracies from their inceptions. As often happens in multiple defendant conspiracies, overt acts occurred in several jurisdictions. The defendants were both aware of the activities occurring in these jurisdictions and participated in them. One remaining defendant, Elm, became an inactive participant as a result of being arrested on other charges. Before his incarceration, however, Elm took manifest actions to ensure that the enterprise continued, which it did. As a result, the subsequent activities undertaken by the co-conspirators are imputed to Elm and are considered foreseeable by him. See, Pinkerton v. United States, 328 U.S. 640, 647-48 (1946).

1 | The indictment also contains separate substantive offenses charged against each
2 | defendant. There is nothing inherently prejudicial about this. Juries are frequently asked to
3 | consider specific evidence as to specific defendants in multiple defendant trials, and the jury
4 | instructions mandate that the jurors do so. See, Ninth Circuit Model Jury Instruction 3.14.

**CONCLUSION**

The defendants are properly joined for trial as a result of their participation in a scheme to ship methamphetamine hydrochloride from Las Vegas, Nevada to Guam and to ship the proceeds from the distribution of these drugs from Guam to Nevada. There is no prejudice to the defendants as a result of the joinder. Accordingly, the Motion For Severance is due to be denied.

RESPECTFULLY SUBMITTED this 16th day of March, 2006.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: RUSSELL C. STODDARD
First Assistant U.S. Attorney