IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 05-00053-006 |
| Plaintiff, | ) | |
| vs. | ) | **REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE** |
| BRIAN WILLIAM ELM, | ) | |
| Defendant. | ) | |

Pending before the court is a a Petition for Offender Under Supervision and supporting declaration (collectively, the "Violation Petition") filed by the U.S. Probation Office on February 8, 2022, *see* ECF No. 488, the Defendant violated his supervised release conditions as follows:

1. Admitted to the use of "meth" on January 19 & 20, 2022, and February 4, 2022;
2. Failed to report for four drug tests (January 22, 29 & 30, 2022, and February 1, 2022); and
3. Failed to truthfully answer questions by the probation officer.

At a hearing held on March 17, 2022, the Defendant neither admitted nor contested the allegations. *See* Minutes, ECF No. 496. The parties also presented their arguments on an appropriation disposition for the violations. Having heard from the parties, the court now issues this Report and Recommendation as to the sentence for the supervised release violations.

## BACKGROUND

**A.    Conviction & Sentence**

On October 10, 2006, the Defendant was sentenced to an imprisonment term of 84 months, followed by four years of supervised release for the offense of Conspiracy to Distribute

Methamphetamine Hydrochloride. See Judgment, ECF No. 342.[1]

The Defendant began his original term of supervised release term on October 23, 2012.

**B.  Post-Conviction Conduct**

On February 19, 2015, an Informational Report was filed, *see* ECF No. 416, indicating that the Defendant failed to report to Marianas Psychiatric Services ("MPS") for quarterly drug testing on December 23, 2014. He reported to the U.S. Probation Office on December 29, 2014, and stated he did not report to MPS for drug testing because he was sick, although he did not provide a doctor's note to verify this. The Defendant was then subjected to a drug test, which was negative, but the sample appeared diluted, so it was subjected to a refractometer test, which indicated the urine sample was presumptively diluted and so the Defendant was returned to a more regimented drug testing schedule. He was also warned not to consume large amounts of water prior to a drug test. The Defendant then reported to MPS for a drug test on January 7, 2015, and said test was presumptive positive. He denied use of illegal substances, but lab results later confirmed the specimen was positive for methamphetamine. At a meeting with the Probation Officer on January 28, 2015, the Defendant admitted he used "ice" on January 5, 2015. He agreed to go to substance abuse counseling, and the Probation Officer requested that the court not take any punitive action at that time. The court concurred. *See* Order, ECF No. 417.

On April 13, 2017, the court revoked the Defendant's supervised release term and sentenced him to an imprisonment term of time served (about six months) and 36 months of supervised release, with a condition that he complete the six-month residential treatment program at Salvation Army's Lighthouse Recovery Center ("LRC").[2] *See* Revocation J., ECF No. 435.

---

[1] This sentence was ordered to run concurrent with the Defendant's 24-month sentence in Criminal Case No. 05-00021, for Felon in Possession of a Firearm. The Defendant was also sentenced on May 8, 2008, in Criminal Case No. 07-00026, for False Declaration Before the Court, and received a 36-month imprisonment term to run concurrent to his sentences in this case and CR 05-00021.

[2] The bases for the revocation were that the Defendant:
- Admitted to the use of methamphetamine (December 14, 2015, January 12, 15, and 23, 2016) and tested positive for methamphetamine (January 21, 2016);
- Failed to participate in substance abuse counseling;

On June 8, 2018, the Defendant's term of supervised release was revoked a second time, and he was sentenced to seven months' imprisonment, with credit for time served, and 47 months of supervised release.[3] *See* Revocation J., ECF No. 446.

On August 19, 2021, the Chief Judge revoked the Defendant's supervised release term for a third time and sentenced him to time served (about seven months and one day), followed by 39 months of supervised release. *See* Revocation J., ECF No. 483. The basis for the revocation was the Defendant's admission to drug use on multiple occasions, twice testing positive for the use of methamphetamine, missing two drug tests, and tampering with another drug test. *Id.* and Report and Recomm., ECF No. 479.

The Defendant's current term of supervision commenced on August 19, 2021.

On December 21, 2021, an informational report was filed informing the court that the Defendant failed to report for two drug tests (November 13 and 15, 2021), tested positive for methamphetamine on November 14 and 18, 2021, and admitted to the use of "meth" on November 13, 2021. At the probation officer's request, the court took no punitive action against the Defendant for the violations. *See* Order, ECF No. 487.

- Failed to follow instructions of probation officer;
- Failed to refrain from use of alcohol;
- Failed to notify the Probation Officer within 72 hours after being questioned by law enforcement;
- Associated with convicted felons;
- Committed a new criminal offense (based on an incident occurring on February 5, 2016, and subsequent arrest for Felon in Possession of Controlled Substance, Eluding a Police Officer, and Attempted Destruction of Evidence);
- Possessed dangerous weapons (*i.e.,* a .22 caliber rifle, a cross bow and several hunting knives); and
- Committed a new criminal offense (based on an incident occurring on September 11, 2015 and subsequent arrest on March 15, 2016, for Possession of a Schedule II Controlled Substance).

---

[3] The bases for the revocation were that the Defendant (1) tested positive for illegal drugs on October 31, 2017 (urinalysis), November 9, 2017 (sweat patch), December 1, 2017 (sweat patch), December 8, 2017 (sweat patch), December 15, 2017 (sweat patch), December 22, 2017 (sweat patch); (2) admitted to drug use on October 24, 2017, on or about November 24, 2017, and January 4, 2018; and (3) had been unsuccessfully discharged from substance abuse treatment on December 26, 2017, and January 11, 2018.

# CURRENT VIOLATIONS

**A.    Filing of Violation Petition**

On February 8, 2022, the probation officer filed the instant Violation Petition, *see* ECF No. 488, alleging the following violations:

| DATE | ACTION |
|---|---|
| January 20, 2022 | Defendant reported to LRC for a noncompliance meeting with the probation officer. He admitted to illicit drug used and signed a form admitting to the use of "meth" on January 19, 2022. Because of this admission, the probation officer could not apply a sweat patch on the Defendant, so he was instructed to continue submitting to urinalysis testing until the drugs had cleared his system. |
| January 22, 2022 | Defendant failed to report to LRC for drug testing. The probation officer contacted the Defendant to report for drug testing the following day. |
| January 23, 2022 | The Defendant reported to LRC as instructed and tested presumptive positive for methamphetamine. He signed a form admitting to the use of "meth" on January 20, 2022. The Defendant informed the LRC staff that he was under the impression he did not need to call the UA testing line because he was waiting for the probation officer to apply a sweat patch. |
| January 29, 2022 | Defendant failed to report to LRC for another drug test. The probation officer sent the Defendant a text message to report for drug testing the following day. |
| January 30, 2022 | Defendant failed to report to LRC for drug testing as instructed and failed to contact his probation officer thereafter to discuss his noncompliance.<br><br>Later than evening, the Defendant's wife sent the probation officer a text message stating that the Defendant had been experiencing flue-like symptoms since the day prior. The text message included a screen shot of two tickets for COVID-19 testing at Barrigada scheduled for the following day (January 31, 2022). |
| February 1, 2022 | Defendant failed to report to LRC for drug testing.<br><br>Defendant sent the probation officer a text message at about 4:12 p.m. stating that he had tested positive for COVID-19. He thereafter sent her his test results from the clinic that indicated that he was tested at the clinic at 2:30 p.m. that day. |
| February 2, 2022 | The probation officer went to the clinic to verify the information previously provided by the Defendant. The clinic staff noticed several inaccuracies and stated that the form had been edited by some other party. |

| | | |
|---|---|---|
| | February 3, 2022 | The probation officer spoke with the Defendant by telephone about the COVID-19 test he alleged took on February 1, 2022. The Defendant stated he was at the "hospice clinic in Dededo" because he had tested positive for COVID-19. He claimed to have been feeling sick since January 28, 2022, but failed to go to the testing appointment previously made for January 31, 2022, and instead went to the clinic on February 1. The Defendant stated the clinic staff told him to isolate and await a call from public health, but public health had not called him yet. When asked, the Defendant stated he did not pay for the test.<br><br>The probation officer then contacted the clinic manager (Stephanie Untalan) who explained why the form submitted by the Defendant to the probation officer was fraudulent. She noted many inaccuracies about the form, to include incorrect signatures. Ms. Untalan further stated that any person being tested at their clinic must pay $75 for a COVID-19 test. She also said that COVID-19 tests are not administered at their Dededo hospice clinic.<br><br>The probation officer then contacted the Defendant's wife, who stated that she and the Defendant's son were both negative. Mrs. Elm further stated that the Defendant went for a COVID test on Monday (January 31, 2022), but she did not go with him. He then informed her the following day that he was positive. The Defendant forwarded the clinic document to his wife, who then sent it to the probation officer. |
| | February 4, 2022 | The probation officer contacted the Defendant to report to the probation office for a noncompliance meeting. He reported that afternoon at about 3:00 p.m. and was subjected to a drug test, which was presumptive positive for methamphetamine. He signed an form admitting to the use of "meth" that day.<br><br>The probation officer confronted the Defendant about the false COVID-19 test results. The Defendant said he did not submit the form, his wife did. The probation officer then reminded the Defendant about their conversation the day prior when he told the probation officer that he went to the clinic and tested positive. The Defendant then admitted that he had lied to the probation officer.<br><br>Later that evening, the probation officer received a text message from Mrs. Elm indicating that she had created the fraudulent form. |

At the request of the probation officer, the court ordered that a summons issue for the Defendant to appear on February 24, 2022, to answer to the alleged violations. *See* Order, ECF No. 490.

On February 22, 2022, Mr. Van de veld filed a motion requesting to continue the February 24th hearing for one week because the Defendant was in quarantine and could not appear. *See* Mot., ECF No. 491. The court granted the motion that same day, continuing the hearing to March 3, 2022. *See* Order, ECF No. 492.

**B.     Initial Appearance and Further Court Hearing**

On March 3, 2022, the Defendant appeared before the court, and Mr. Van de veld was appointed to represent the Defendant. *See* Minutes, ECF No. 493, and Appointment Order, ECF No. 495. Mr. Van de veld asked for a two-week continuance because needed some time to speak with the Defendant about the allegations. The government asked that the Defendant be detained pending the next hearing, particularly because he just tested presumptive positive on a drug test administered just before the hearing. Mr. Van de veld argued that the court should await the outcome of the lab analysis and asked that the Defendant be allowed to remain on release so that defense counsel could confer more easily with the Defendant because detention would impede his ability to communicate with the Defendant. He further asserted that a sweat patch could be applied on the Defendant to monitor any drug use and that it would be an effective deterrent. The probation officer noted that this was the Defendant's fourth revocation proceeding and argued that regardless of the results of the drug test administered before the hearing, the Defendant was still facing mandatory revocation because he has had more than three positive results on drug tests in a one year period and has also failed to comply with drug testing. The court ordered the Defendant detained, stating that the trend in his behavior is troubling if sustained by the evidence. The matter was then continued to March 17, 2022.

On March 17, 2022, the parties again appeared before the court. *See* Minutes, ECF No. 496. The Defendant stated that he would not admit nor would he contest the allegations in the Violation Petition. The parties then presented their respective recommendations to the court as to an appropriate sentence for the violations. Having reviewed the record herein and considered the parties' recommendations, the court now issues this Report and Recommendation.

## LEGAL STANDARD

A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Pursuant to Section 3583(g), revocation is mandatory if a

defendant refuses to comply with required drug testing. *See* 18 U.S.C. § 3583(g)(3).

**PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED**

According to the Violation Worksheet, the above-noted violations constitute Grade C violations, with a guideline range of 6-12 months imprisonment based on a CHC of IV, followed by a term of supervised release of 27-33 months. *See* Violation Worksheet, ECF No. 488-1. This is the Defendant's fourth revocation proceeding. The Defendant's underlying offense of conviction is a Class B felony, so the Defendant's maximum sentence for a revocation is not more than three (3) years. He previously served about six months for the first revocation, seven months on the second revocation, and seven months and one day for the third revocation, for a total of 20 months and one day, leaving 15 months and 29 days remaining for any other revocation proceeding.

The probation officer asked for a "max out" sentence of 15 months with no supervised release term to follow. Given his history, the probation officer argued that the maximum sentence was warranted since the Defendant is just not amenable to supervision. The government agreed that the record supported a maximum sentence pursuant to Section 3583(e)(3).

Defense counsel stated that after the Defendant's third revocation proceeding, the government asked for the maximum sentence out of frustration, but the court did not impose it then and should not do so now. Counsel further argued that an upward variance requires notice in advance, and here he received no notice that the government and probation officer were going to ask for a sentence above the guideline range. Mr. Van de veld noted that the essence of the violations are based on the Defendant's drug use and addiction. He argued that intermittent sanctions and court involvement will result in a modification of his behavior. Defense counsel asserted that the drug court format is a better forum to deal with his addiction. He noted that the court impose a split sentence since these are grade C violations, and counsel asked that the court impose a sentence of three months confinement and three months home detention. He asserted that the Defendant has a car and a job and a longer sentence will result in loss of his job and the car going into default. Mr. Van de veld argued that an appropriate punishment would be time served, since he had already served two weeks, and would be in line to a sanction in drug court. Defense counsel requested the court show the Defendant leniency so that he could get back into treatment and care for his family.

The court agrees with defense counsel's statements regarding drug court treatment scheme, but the court also understands the frustration of the probation officer and the government, who feel that the Defendant is not making an effort with treatment and sobriety. Because of limited treatment resources, the probation office must allocate resources to those who want to take them seriously. It appears that the Defendant has relapsed, and the concern here is that the Defendant is trying to hide his relapse. While the Defendant appears remorseful in court, he does not express such remorse when he meets with his probation officer. This is the Defendant's fourth revocation proceeding, so the court is not inclined to show much leniency, particularly after he lied to the probation officer about his health condition. Nevertheless, the court also does not agree that a max out sentence is warranted. The court is not prepared to give up on the Defendant just yet. Instead, the court finds that a split sentence is appropriate for the violations here and will allow the Defendant to obtain treatment for his drug addiction. Additionally, a split sentence will allow him to return to his job at the Salvation Army Thrift Sore, where his manager speaks highly of his work ethic. *See* Notice of Receipt of Letter, ECF No. 497.

As for defense counsel's assertion regarding lack of notice for the upward variance sought by the government and the probation officer, the court finds no merit in this argument. The Supreme Court and Ninth Circuit have both held that advance notice under Rule 32(h) is not required if a district court imposes a sentence outside of the advisory guideline range as a result of a variance (*i.e.,* the statutory factors in 18 U.S.C. § 3553(a)). *See Irizarry v. U.S.,* 553 U.S. 708 (2008) and *United States v. Cruz-Perez*, 567 F.3d. 1142, 1146 (9th Cir. 2009). Additionally, even if such notice was required, the Defendant is now on notice that the government and the probation officer are seeking a sentence above the advisory guideline range, so he can prepare appropriately before going before the Chief Judge for final sentencing.

## RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the Chief Judge (1) accept the Defendant's admissions to the violations noted above, (2) revoke the Defendant's supervised release term and (3) impose a split sentence of time served (approximately four months) and three months of home detention, with 34 months of supervised release to follow.

A disposition hearing shall be held on July 14, 2021, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Jun 28, 2022

**NOTICE**

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**